UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION


FILED
AUG 24 2020

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHAVEZ SPOTTED HORSE,<br><br>Defendant. | 1:17-CR-10005-CBK<br>1:17-CR-10013-CBK<br><br><br>OPINION AND ORDER ON MOTIONS FOR COMPASSIONATE RELEASE |

## INTRODUCTION

Defendant was convicted in 1:17-CR-10005-CBK of three counts of child abuse and three counts of assault with a dangerous weapon. He was sentenced on January 4, 2018, to 76 months imprisonment on each count, all such sentences to run concurrently and the total sentence to run consecutive to the sentence imposed in 1:17-CR-10013-CBK. Defendant was convicted in 1:17-CR-10013 of one count of receipt of child pornography. He was sentenced on January 4, 2018, to 78 months imprisonment, such sentence to run consecutive to the sentence imposed in 1:17-CR-10005-CBK. He is currently imprisoned at the United States Medical Center for Federal Prisoners in Springfield, Missouri. The Bureau of Prisons (BOP) has calculated his current release date as January 17, 2028. https://www.bop.gov/inmateloc/ visited August 24, 2020. Defendant has filed motions in both cases for compassionate release.

## DECISION

The Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, § 212, authorized, *inter alia*, the district court, upon motion of the Director of the BOP, to reduce a prison term after considering the factors set forth in 18 U.S.C. § 3553(a), "if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The United States Sentencing Commission was established by the Sentencing Reform Act, Pub. L. 98-473, Title II, § 217(a), codified at 18 U.S.C. § 3582(c)(1)(A). Effective November 1, 2006, the United States Sentencing Commission adopted Guidelines § 1B1.13, the policy statement on reduction of a

term of imprisonment pursuant to § 3582(c)(1)(A). These provisions are known as the compassionate release provisions of the federal criminal code and the Federal Sentencing Guidelines.

On December 21, 2018, the First Step Act of 2018 was enacted. Pub. L. 115-391. The First Step Act amended, *inter alia*, § 3582(c)(1)(A) to increase the use and transparency of compassionate release. Pub. L. 115-391, § 603(b). The First Step Act added district court authority to grant compassionate release upon motion of a defendant after the exhaustion of administrative remedies. The Federal Sentencing Guidelines have not been amended since prior to the passage of the First Step Act in 2018. As a result, the Federal Sentencing Guidelines address only review of a motion for compassionate release made by the Director of the BOP. United States v. Rodd, 966 F.3d 740, 746 (8th Cir. July 16, 2020).

Under the First Step Act provisions of the compassionate release statute,

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

## I. Exhaustion of Administrative Remedies.

The district court cannot grant a compassionate release motion until the defendant has complied with the exhaustion requirements of § 3582(c)(1)(A). Specifically, the defendant is required to "appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

behalf" or wait "30 days from the receipt of such a request by the warden of the defendant's facility." As Chief Judge Roberto Lange has observed:

> A debate exists . . . among some district courts as to whether a response from the warden alters the thirty-day waiting period and triggers the need to pursue administrative appeals or if the defendant may instead move the district court directly. Some courts have read the thirty-day bypass provision to allow a court to consider a motion brought by a defendant after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," to mean that such motion may be brought if thirty days have passed without a response from the warden. Other courts have interpreted the thirty-day provision to allow a court to act on a defendant's motion thirty days after the warden receives the request, even if the warden has denied it and the defendant has not made any attempts to appeal that decision administratively. **Based on the plain language of the statute, this Court will consider [defendant's] motion because more than 30 days have passed since the warden received at least one of his compassionate release requests.**

United States v. Saenz, ___ F.Supp.2d ___, ___, 2020 WL 4347273, at *3 (D.S.D. July 29, 2020) (emphasis added) (internal citations omitted). *See also* United States v. Morehouse, ___ F.Supp.2d ___, ___, 2020 WL 2836188, at *2 (D.S.D. June 1, 2020) (Judge Karen E. Schreier) (motion for compassionate release is ripe for review where defendant submitted his request to the warden and the warden denied the request). The United States Court of Appeals for the Eighth Circuit has not directly addressed the exhaustion requirement but has observed in one case that

> the district court recognized that the First Step Act amended § 3582(c) to permit an inmate to bring a motion for compassionate release to the court if the inmate has exhausted his administrative appeals. The inmate also may go directly to the court if the warden of the inmate's facility does not respond to the inmate's compassionate-release request within 30 days.

United States v. Rodd, 966 F.3d. at 744. A fair reading of Rodd is that the exhaustion requirement is met where the defendant either exhausts the administrative appeals when the warden fails to bring a motion on the defendant's behalf **or** waits 30 days after submitting a request to the warden. *See also* United States v. Harris, 812 Fed. Appx. 106, 107, 2020 WL 4048690, at *1 (3rd Cir. July 20, 2020) (government conceded that defendant did not need to completely exhaust the warden's denial), United States v. Alam, 960 F.3d 831, 833 (6th Cir. June 2, 2020) ("They must 'fully exhaust[ ] all administrative rights' or else they must wait for 30 days after the warden's 'receipt of [their] request.'"), and United States v. Springer, ___ Fed.

3

Appx. ___, ___, 2020 WL 3989451, at *3 (10th Cir. July 15, 2020) (recognizing § 3582(c)(1)(A)'s either/or language).

It appears from the record that defendant submitted a request for compassionate release and his request was denied. There is no contention here that defendant has not exhausted his administrative remedies.

**II. Compassionate Release.**

In evaluating a request for compassionate release, the district court is required to consider the factors set forth in section 3553(a), to the extent that they are applicable, and may reduce defendant's sentence of imprisonment if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Defendant is entitled to compassionate release if this Court determines that extraordinary and compelling reasons warrant a reduction in sentence.

The appliable policy statements issued by the Sentencing Commission provide that, "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," the district court may reduce a defendant's term of imprisonment if, after consideration of the factors set forth in 18 U.S.C. 3553(a), the district court determines that –

> (1)   (A)   extraordinary and compelling reasons warrant the reduction; or
>
>        (B)   the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2)   the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)   the reduction is consistent with this policy statement.

Guidelines § 1B1.13. The Sentencing Commission identified in Application Note 1 four examples of extraordinary and compelling reasons for compassionate release:

4

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The Eighth Circuit has not decided whether the district court is bound by the Sentencing Commission's policy statement when considering a compassionate release motion under the First Step Act amendment to § 3582(c)(1)(A). "While some courts adhere to the pre-First Step Act policy statements, other courts have ruled that the pre-First Step Act policy statements are inapplicable, and that a judge has discretion to determine, at least until the Sentencing Commission acts, what qualifies as extraordinary and compelling reasons." United States v. Rodd, 966 F.3d at 745 (cleaned up). In both Eighth Circuit cases that have addressed

5

compassionate release since the adoption of the First Step Action, the Eighth Circuit declined to address the issue because, whether or not § 1B113 applies, the Eighth Circuit held that the district court in both cases considered the § 3553(a) factors and determined that, even assuming the First Step Act envisioned a more expansive definition of ordinary and compelling reasons that set forth in § 1B1.13, compassionate release was not warranted. United States v. Rodd, 966 F.3d at 745-46, and United States v. Loggins, ___ F.3d at ___, 2020 WL 4375103, at *1.

Chief Judge Lange has held that the "discretion given to the Director of the BOP in § 1B1.13 comment note 1(D), also allows federal judges to consider 'extraordinary and compelling reason[s] other than' those specifically described." United States v. Dillabaugh, ___ F.Supp.2d ___, ___, 2020 WL 3402392, at *3 (D.S.D. June 19, 2020). In other words, the district courts are not limited by § 1B1.13, even if it applies to post First Step Act motions for compassionate release.

Defendant requests compassionate release based upon his medical condition and the fact that COVID 19 is wide-spread in the BOP system. Chief Judge Lange has observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

United States v. Frost, ___ F.3d ___, ___, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) *citing* United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Defendant contends that his health conditions during the COVID-10 pandemic present an extraordinary and compelling basis for a sentence reduction which is authorized by Application Note 1(D) to Guidelines § 1B1.13.

Defendant is 43 years old. At the time of his sentencing in January of 2018, his medical condition was not good. He suffered from acute renal failure, Type 2 diabetes, kidney disease, hypertension, and an enlarged heart. He also experienced diabetic neuropathy in his feet. During the ten months that he was in federal custody awaiting trial and sentencing, he was not receiving insulin but was managing his diabetes with a controlled diet. He had previously been

treated with medication for his kidney disease and high blood pressure but, following the child abuse trial, he refused to take his prescribed medication. He was 6'4" tall and weighed 350 pounds. His medical condition did not affect the length of the sentences imposed.

During 2020 defendant has been treated by the BOP for Type 2 diabetes, anemia, hyperparathyroidism, vitamin D deficiency, sores on his toes, and end state renal disease. Defendant is prescribed dialysis for his kidney disease, although he does not consistently attend his dialyses treatments and, when he does attend, he often refuses to stay for the entire 4 ½ hour recommended time. He is currently residing in the long-term care medical unit at MCFP Springfield.

In January 2020, defendant was counseled on dialysis nutrition education because he was refusing dialyses treatments and not complying with recommended medications. He had been skipping dialyses and expressed a desire to stop dialyses altogether, even though he was advised that failing to treat his chronic renal failure could result in death.

In February 2020, defendant told his physician that he wanted to quit dialyses because of the way he feels afterward and because "I have nothing to live for." He also treated for a chronic wound on his foot. His physician recommended an orthotic to alleviate the problem but defendant declined, stating "I don't want to do anything. What will happen, will happen. God will take care of it." He also refused to have a permanent access placed for dialyses and instead opted to continue with the chest catheter. He indicated that "when this stops working, I'll stop dialyses." Defendant also refused an exam by an ophthalmologist to treat hypertension cataracts, which failure to treat could lead to blindness or death or both.

In April 2020, defendant refused a dialyses line exchange to correct a broken arterial clamp. In May of 2020, defendant requested "to be removed/taken off the renal diet" because "the meals are terrible and the trays don't have the double meat servings." Also in May, he indicated to a dialyses nurse that he struggles with whether to continue dialyses or stop. He needed a line change but indicated he did not "feel like having it changed."

There is no doubt that, taking into account all the information readily available from the Centers for Disease Control, defendant is at a higher risk for severe illness from COVID-19. It is well known that patients with diabetes and kidney disease are at a higher risk of complications and death from COVID-19 than the general population. Unlike the vast majority of people, the

7

defendant is not acting in his own best interests. He is deliberately increasing his chances for adverse results. This conduct should not be rewarded.

As of today, MCFP Springfield reports that there are two confirmed inmate cases and one confirmed staff case. There have been zero inmate and staff deaths from COVID-19. https://www.bop.gov/coronavirus/ visited August 24, 2020. MCFP Springfield has a remarkably low number of inmates and staff who have ever tested positive. Only four inmates and three staff have ever tested positive. Further, defendant is being held in the log-term care medical unit and is not in contact with the general population.

I have considered all of the § 3553(a) factors, as I did 2 ½ years ago when I originally sentenced defendant. I find that the COVID-19 public health emergency is a compelling reason under Guidelines § 1B1.13 which, together with defendant's serious medical conditions, could justify compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Defendant suggests that, if released from prison, he would live with Russell Has Horns in Little Eagle, South Dakota. He proposes to obtain medical care at the Indian Health Service Hospital. It is well known that lack of health care is a large and seemingly uncurable situation in Indian Country. It is difficult to attract high quality health care providers to isolated communities. I have observed too many incidents of malpractice by hospitals and individual health care providers serving our Native American brothers and sisters. I believe this defendant is safer where he is.

I also take into account that the defendant's crimes are serious. He has served less than four years (taking into account time served pretrial) of his 12 years, ten months sentence.

I find that the defendant is not entitled to compassionate release. He has not demonstrated that he would be at a lesser risk from COVID-19 in home confinement than in MCFP Springfield. Taking into account all of the provisions of 18 U.S.C. § 3582(c)(1)(A) and § 1B1.13 of the Federal Sentencing Guidelines, I do not find that extraordinary and compelling reasons exist which would entitle defendant to compassionate release at this time. He has also shown himself to be dangerous to children.

**ORDER**

Based upon the foregoing,

IT IS ORDERED that defendant's motions, Doc. 127 in CR 17-10005 and Doc. 95 in CR 17-10013, for compassionate release are denied.

DATED this 24th day of August, 2020.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge